**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **FRANK VILLALOBOS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **No. 16 CV 11707** |
| **v.** | ) |
| | ) **Magistrate Judge Michael T. Mason** |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of

the Commissioner of Social Security denying Frank Villalobos' ("Claimant") claim for

Supplemental Security Income ("SSI").  The parties have consented to the jurisdiction of

the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons

that follow, Claimant's motion for summary judgment, (Dkt. 15), is denied and the

Commissioner's cross-motion for summary judgment, (Dkt.  19) is granted.

## I. BACKGROUND

### A. Procedural History

Claimant filed his application for SSI benefits on October 5, 2012, alleging

disability beginning on January 11, 2006, due to schizophrenia, depression, head injury,

and fracture of the left leg.[1]  (R. 293-302.)  Claimant's application was denied initially

---

[1]  Claimant previously applied for SSI benefits on March 15, 2006, August 9, 2006, and April 14,
2011.  (R. 111.)  All three claims were ultimately denied.  (*Id.*)  The administrative record
includes the transcript of a hearing held on August 16, 2012, related to Claimant's 2011
application.  (R. 30-63.)

and on reconsideration.  (R.132, 144.)  On September 23, 2013, Claimant requested a hearing before an ALJ, which was held on March 12, 2015.  (R. 64-74, 155-57.)  A supplemental hearing was held on June 2, 2015.  (R. 76-109.)  On August 31, 2015, the ALJ issued a written decision finding that Claimant was not disabled.  (R. 11-25.)  On December 6, 2016, Claimant's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner.  (R. 1-4.)  This action followed.

### B. Medical Evidence

#### 1. Treatment Notes

On October 30, 2012, Claimant met with his primary care physician, Samara Taher, M.D.[2]  (R. 387-89, 418-20.)  He reported back pain, leg pain, and migraine headaches.[3]  (*Id*.)  In response, Dr. Taher referred Claimant to pain management for his back and leg pain, and prescribed Ultram and Propranolol.[4]  (*Id*.)  Claimant followed up with Dr. Taher a month later, reporting migraines that were improving.  (R. 390-91, 424-25.)  His symptoms were relieved by over-the-counter medications and by caffeine.  (*Id*.)  Dr. Taher increased Claimant's dose of Propranolol.  (*Id*.)  She also referred Claimant to a specialist for leg pain, which he reported was worse in the winter.  (*Id*.)

---

[2]  Claimant was incarcerated between 2008 and 2011.  (R. 394.)  There are no treatment records from that period.

[3]  At the visit Claimant reported seeing a psychiatrist and a counselor for his anger and depression.  This treatment may have been at Jackson Park hospital.  (R. 406.)  The record however, does not contain any mental health treatment notes, and at his hearing, Claimant's counsel reported that the record was complete.  (R. 80, 118.)

[4] Ultram is a narcotic like pain reliever, used to treat moderate to severe pain.  *Available at* https://www.drugs.com/ultram.html (last viewed 9/14/2018).  Propranolol is a beta-blocker medication, used to reduce the frequency and severity of migraine headaches.  *Available at* https://www.drugs.com/propranolol.html (last viewed 9/14/2018).

On exam, Claimant was observed walking with a limp, but was not using an assistive device. (*Id.*)

On January 25, 2013, Claimant continued to report migraines to Dr. Taher, who again increased his dose of Propranolol. (R. 426-28.) Claimant also reported back pain, which was most likely due to weather changes. (*Id.*) Dr. Taher again referred Claimant to pain management and refilled his prescription of Ultram. (*Id.*)

On March 22, 2013, in response to Claimant's complaints of migraines, Dr. Taher referred him to a neurologist for assessment and treatment.[5] (R. 429-32.) Claimant also reported a worsening in his anxiety. (*Id.*) Dr. Taher recommended Claimant continue his current medications, which included Seroquel and Trazodone, and prescribed Paroxetine.[6] (*Id.*) Claimant followed up with Dr. Taher on July 9, 2013. (R. 433-35.) Once again, he reported migraine headaches. (*Id.*) The doctor re-referred Claimant to a specialist and added Topiramate to his list of medications.[7] (*Id.*) For his physical pain, Dr. Taher recommended over-the-counter medication as needed and Ultram for severe pain. (*Id.*)

On November 22, 2013, Claimant met with Heeren Patel, M.D., for a neurology consult. (R. 455-59.) Claimant reported daily headaches, which he indicated started in 2006, after a motor vehicle accident. (*Id.*) Dr. Patel noted that Claimant's migraines

---

[5] At this visit, Claimant also complained of neuropathy in his leg. The doctor recommended he use a cane to assist with walking.

[6] Seroquel is a antipsychotic medication, used to treat, among other things, schizophrenia. *Available at* https://www.drugs.com/seroquel.html (last viewed 9/14/2018). Trazodone is an anti-depressant. *Available at* https://www.drugs.com/trazodone.html (last viewed 9/14/2018). Paroxetine is used to treat seizures and migraine headaches. *Available at* https://www.drugs.com/topamax.html (last viewed 9/14/2018).

[7] Topiramate is used to treat seizures. *Available at* https://www.drugs.com/mtm/topiramate.html (last viewed 9/14/18).

likely have multiple etymologies, including daily analgesic use.  (*Id*.)  The doctor prescribed Gabapentin and recommended Claimant discontinue Tramadol and Propranolol.[8]  (*Id*.)

On March 25, 2014, Claimant followed up with Dr. Taher.  (R. 442-45.)  Claimant reported improvement with his migraines, but that he rebounded once a week.  (*Id*.)  The doctor recommended physical therapy, as well as a cold compress on the neck, to manage his symptoms.  (*Id*.)  On May 7, 2014, Claimant again complained of migraines.  (R. 446-47.)  Dr. Taher again referred Claimant to physical therapy.  (*Id*.)  In addition, Claimant requested a refill of his schizophrenia medication.  (*Id*.)  Dr. Taher refilled his medications and referred Claimant to a psychiatrist for management.  (*Id*.)  On December 2, 2014, Claimant reported meeting with a psychiatrist, but did not establish care because he felt disrespected by the doctor.  (R. 448.)  He stated he would continue looking for another doctor and his current symptoms were stable.  (*Id*.)  Claimant denied symptoms of hallucinations or delusions and denied mood changes.  (*Id*.)

## 2. Agency Physicians

On February 13, 2013, Claimant underwent a consultative exam ("CE") with psychologist, Jeffery Karr, Ph.D.  (R. 394-97.)  Claimant reported dropping out of high school in the eleventh grade.  (*Id*.)  He has attended GED classes three times a week.  (*Id*.)  Other than attending classes, he noted he watches television, plays with his young nieces and nephews, and spends time with a female friend.  (*Id*.)  Due to his health however, he reported being completely dependent on others to do chores.  (*Id*.)

---

[8]  Antiepileptic drug, used to treat nerve pain.  *Available at* https://www.drugs.com/gabapentin.html (last viewed 9/14/2018).

On exam, he presented as friendly and polite.  (*Id*.)  Dr. Karr observed that Claimant seemed easily confused and required frequent repeated instructions.  (*Id*.)  Claimant could not respond to proverbs or serial seven's.  (*Id*.)  In addition, Claimant could not recall any three items and, despite practice, could not repeat three digits backwards.  (*Id*.)  Ultimately, Dr. Karr diagnosed Claimant with polysubstance abuse history and mood disorder, not otherwise specified.  (*Id*.)  Claimant was also diagnosed with anti-social personality disorder, history for head and leg injury, and multiple pain areas.  (*Id*.)

On March 12, 2013, Kirk Boyenga, Ph.D., reviewed Claimant's medical file and found that Claimant had the severe impairment of affective disorder.  (R. 124.)  Dr. Boyenga noted Claimant had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concertation, persistence, or pace.  (R. 125.)  The doctor further explained that Claimant exhibits an affective disorder and personality disorder, with a history of addiction problems reported.  (R. 129.)  The doctor opined Claimant was capable of performing simple tasks, and that his adaption abilities limited him to routine, repetitive tasks, and required reduced interpersonal contact due to impaired social skills.  (*Id*.)  On September 12, 2013, Howard Tin, Psy.D confirmed Dr. Boyenga's opinion.  (R. 136-41.)

### C. Claimant's Testimony[9]

At the time of the hearings, Claimant was forty-four years old and living with his mother.  (R. 68, 82.)  Claimant testified that he experienced both physical and mental issues.  Physically, Claimant reported headaches and pain in his left leg and upper

---

[9]  The Court has merged the testimony from both hearings.

shoulder.  Claimant testified that he has blackouts once every two or three days which lasted forty-five seconds.[10]l  (R. 74.)  After a blackout, Claimant testified that everything is blurry, and he needs to slow down.  (*Id*.)  His doctors apparently attributed his blackouts to his car accident.  (R. 89.)  Claimant also reported that he gets headaches every day.  (R. 86.)  To alleviate symptoms, he takes medication or lays down and closes his eyes.  (*Id*.)  With respect to his extremity pain, Claimant described problems with his left knee and hip.  (R. 93.)  He reported numbness, sharp pain, and tingling. (*Id*.)  He uses a cane every day.  (R. 85.)  He stated that he cannot walk very far and could stand about a minute to a minute and a half.[11]   (R. 70.)  In addition, he stated that he could sit for six minutes at a time before needing to readjust.  (*Id*.)  Claimant also testified that he did not do any chores around the house.  (R. 69, 97.)  He has not driven since his accident.  (R. 72.)

Claimant reported that he did not have insurance between 2000 and 2012, and the last time he saw a mental health professional was approximately four months before the first hearing.  (R. 71.)  Claimant reported that despite medication he becomes depressed and just wants to sleep and seclude himself.  (R. 89, 100.)  He stated that these symptoms occur about five times a week.  (*Id*.)  Claimant also reported daily auditory hallucinations.  (R. 90.)

Claimant stated that he did not graduate high school, and unsuccessfully attempted to receive his GED.  (*Id*.)  He reported taking classes approximately three days a week at a local college to prepare for the test.  (R. 83.)  The classes lasted about

---

[10]  At the second hearing, Claimant reported blackouts happening three or four times a month. (R. 88.)
[11]  At the second hearing, Claimant stated he could walk about twenty or thirty feet.  (R. 86.)

two hours.  (*Id*.)  Claimant reported that he thinks his memory problems, specifically with memorization, caused him to fail the GED test.  (R. 98.)

### D. Vocational Expert Testimony

Vocational Expert ("VE") Jill Radke also appeared at the hearing.  (R. 102.)  The ALJ provided four hypotheticals.  First, the ALJ asked the VE to consider an individual with limited education, and the same work history as Claimant, but who was limited to medium work, occasional pushing and pulling with the left leg, frequent crouching and frequent climbing of ladders, ropes, or scaffolds.  (R. 104.)  The VE testified that such an individual could not do Claimant's past work, but could work as a dish washer, janitor, and hand packer.  (R. 105.)  For the second hypothetical, the ALJ added moderate limitations in the ability to maintain concentration, persistence, or pace, further limiting the individual to performing simple tasks involving only occasional interaction with the general public, co-workers, or supervisors.  (*Id*.)  The VE testified that Claimant could perform the aforementioned jobs.  (R. 106.)

For the third hypothetical, the ALJ asked the VE to consider all the aforementioned limitations, but further limited the individual to light work, who required a cane to ambulate using the right or dominant hand to carry the cane, no pushing or pulling with the left leg, occasional balancing, stooping, kneeling, crouching, and crawling.  (*Id*.)  The VE testified that such a person could work as a mail clerk or general office clerk.  (*Id*.)  Lastly, the ALJ changed the hypothetical to add a limitation to no interaction with the general public, and only brief superficial interaction with co-workers and supervisors.  (R. 107.)  The VE testified that there would be no jobs a person with such limitations could perform.  (*Id*.)

## II. Analysis

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence," he "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate [his] assessment of the evidence to assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

### B. Analysis under the Social Security Act

In order to qualify for disability benefits, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

Here the ALJ applied the five-step process to reach his decision denying Claimant's application for benefits. At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the application date of October 5, 2102. (R. 13.) At step two, the ALJ determined that Claimant had the severe impairments of migraine headaches, status post fracture of the left femur, obesity, mood disorder, and paranoid schizophrenia. (*Id.*) The ALJ found that Claimant's psoriasis was non-severe. (*Id.*) At step three, the ALJ concluded that Claimant does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments.  (R. 13-16.)

The ALJ went on to assess Claimant's residual functional capacity ("RFC"), ultimately finding that Claimant had the RFC to perform light work, except that he can engage in no pushing or pulling with the left leg, frequent climbing of ladders, ropes, or scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling, and requires the use of a cane to ambulate using his dominant right hand.  Additionally, due to moderate limitations in his ability to maintain concentration, persistence, or pace, he is functionally limited to performing simple tasks involving occasional interaction with the public, coworkers, and supervisors.  (R. 16.)  The ALJ determined at step four that Claimant could not perform his past work.  (R. 23.)  Finally, the ALJ found that Claimant could perform work in the national economy, including in the positions of mail clerk and general office clerk.  (R. 24.)

Claimant now argues that the ALJ's decision is not supported by substantial evidence and requires remand.  We address Claimant's arguments below, ultimately concluding that the ALJ's opinion should be affirmed.

### C. The ALJ's Decision is Supported by Substantial Evidence and Free From Reversible Error.

Claimant contends that the ALJ's decision is not supported by substantial evidence.  Before addressing Claimant's substantive arguments, the Court notes that all of Claimant's arguments are underdeveloped, vague, and lacking in any legal or factual analysis.[12]  Nonetheless, the Court will attempt to address all of Claimant's arguments.

---

[12]  Claimant is represented by counsel.  The Court notes that counsel has previously been criticized for his underdeveloped arguments.  *See Stojakovic v. Berryhill*, No. 16 C 10525, 2017 WL 4237034, at *2 (N.D. Ill. Sept. 25, 2017) (noting arguments are brief and conclusory); *Bijedic*

Claimant begins by stating that the ALJ contradicted himself by concluding that Claimant was not disabled *after* he found that he was not capable of performing past work. This argument is without merit and, as the Commissioner points out, Claimant seems to have a fundamental misunderstanding of the sequential process. The ALJ's inquiry does not end at step four. *See* 20 C.F.R. § 416.920 (explaining that if an individual is found not capable of returning to past work, the ALJ proceeds to step five to see if the individual can make an adjustment to other work). Although, at step four, the ALJ found Claimant was not capable of performing his past work, the ALJ properly proceeded to step five. Relying on the testimony of the VE, the ALJ then concluded Claimant was capable of performing other work. Claimant however, does not challenge the ALJ's step five finding. As such, his argument on this point completely misses the mark.

Next, Claimant appears to challenge the ALJ's treatment of Claimant's subjective symptoms. An ALJ's assessment of a claimant's subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). However, an ALJ must support his findings with specific reasons that are supported by the record. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013).

Specifically, Claimant takes issue with the ALJ's reliance on a lack of medical opinion regarding his inability to work. Claimant argues that it does not necessarily follow that Claimant *can* work. While true, the ALJ did not rely exclusively on a lack of

---

*v. Berryhill*, No. 15 C 6864, 2017 WL 2404950, at *2 (N.D. Ill. June 2, 2017) (stating that plaintiff's brief is "wholly lacking in legal and factual analysis"); *Gasko v. Berryhill*, No. 16 C 8102, 2017 WL 1833191, at *5 (N.D. Ill. May 8, 2017) (underdeveloped arguments); *Ballard v. Berryhill*, No. 15 C 5069, 2017 WL 770992, at *5 (N.D. Ill. Feb. 28, 2017) (underdeveloped arguments).

medical opinions to discount Claimant's testimony.  In fact, the ALJ provided several other reasons for discounting Claimant's subjective complaints, none of which Claimant challenges.  For example, the ALJ noted that Claimant's statements were uncorroborated by the medical evidence.  In particular, the ALJ noted that despite Claimant's testimony that he experienced routine blackouts, there is no evidence that he ever complained to doctors about blackouts.  (R. 18-19.)  Likewise, the ALJ noted that his treatment was routine and conservative.  (*Id*.)  Although Claimant was initially prescribed pain medication for his headaches, after his meeting with the neurologist, he was prescribed Gabapentin and told to use a cold compress and referred to physical therapy.  (R. 442, 458.)  Because an ALJ's credibility determination does not need to be flawless, the Court finds that, on balance, the ALJ's determination here was not patently wrong. *Halsell v. Astrue*, 357 F. App'x 717, 723 (7th Cir. 2009) ("[n]ot all of the ALJ's reasons must be valid as long as enough of them are").

Claimant also contends that the ALJ "played doctor."  According to Claimant, the ALJ improperly assumed that Claimant's headaches may have been "caused by drugs." Claimant's argument is flawed for two reasons.  First, it is undercut by the treatment record.  In particular, Dr. Patel, a neurologist, opined that Claimant's headaches were likely due, in part, to pain medication.  (R. 458.)  Second, and more importantly, Claimant's argument is a mischaracterization of the ALJ's decision.  Contrary to Claimant's assertion, the ALJ did not attribute Claimant's headaches to drug use. Rather, the ALJ attributed Claimant's complaints of pain to drug-seeking behavior.  (R. 19.)  By mischaracterizing the ALJ's decision and failing to properly develop his arguments, Claimant has, in effect, waived any other objection.

Claimant also appears to take issue with the ALJ's reliance on the findings of the agency physicians. In particular, Claimant contends that it is "well known that more weight is generally given to the opinion of a treating physician." (Pl.'s Mot. At 4.) It is unclear, however, how the treating physician rule applies in this case. Although Dr. Taher regularly treated Claimant, the doctor did not provide an opinion for the ALJ to weigh. *Kittelson v. Astrue*, 362 F. App'x 553, 558 (7th Cir. 2010) (pointing out that a treating physician's opinion cannot be given controlling weight where no such opinion has been provided). Claimant fails to cite to a medical source statement, only citing to case law that is not discussed nor helpful.[13]

To the extent Claimant is challenging the ALJ's RFC finding, that argument also lacks merit "because there is 'no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.'" *Davis v. Berryhill*, 723 F. App'x 351, 356 (7th Cir. 2018) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). The ALJ limited Claimant to light work, with additional exertional and non-exertional limitations. (R. 16.) To support his non-exertional limitations, the ALJ gave "great weight" to the opinions' of Drs. Boyenga and Tin. (R. 23.) With respect to the physical limitations, the ALJ gave "partial weight" to state agency consultants who limited Claimant to medium work. (*Id*.) The ALJ did not defer to their opinion because of newly submitted evidence. In particular, the ALJ noted that subsequent evidence demonstrated cane use and ongoing treatment for pain. Claimant does not challenge the ALJ's reasoning. Instead, he mistakenly argues that the ALJ ignored evidence,

---

[13] Claimant cites to *Whitney v. Schweiker*, to support his treating source argument. 695 F.2d 784 (7th Cir. 1982). Unlike here, in that case, claimant's treating doctor actually provided a medical source statement.

namely Dr. Taher's treatment notes. The ALJ however, explicitly referenced all of Dr. Taher's treatment notes in his opinion. As such, the ALJ sufficiently articulated his analysis of the evidence to allow this Court to trace the path of his reasoning. *Diaz*, 55 F.3d at 307; *Pepper*, 712 F.3d at 363 (7th Cir. 2013).

Ultimately, Claimant has neither provided any evidence contrary to the ALJ's findings nor otherwise demonstrated any legal error. As such, the Court affirms the ALJ's decision in its entirety.

## III.  Conclusion

For the foregoing reasons, Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. It is so ordered.

**The Honorable Michael T. Mason**
**United States Magistrate Judge**

**DATED: October 15, 2018**